IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT ALLEN SALATA, | ) | CASE NO. 1:15 CV 2430 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Scott Allen Salata under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 18. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 12.

[4] ECF # 13.

[5] ECF # 7.

[6] ECF # 15.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

### A.    Background facts and decision of the Administrative Law Judge ("ALJ")

Salata who was fifty-years old at the time of the administrative hearing,[11] did not graduate high school, but has his GED.[12] He has previously worked as a production machine operator, stock handler, and truck driver.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Salata had the following severe impairments: left foot and ankle disorders, a back disorder, a neck disorder, emphysema, status post removal of left upper lob secondary to lung cancer in 2005, and depression (20 CFR 404.1520(c)).[14]

---

[7] ECF # 27 (Commissioner's brief); ECF # 22 (Salata's brief); ECF # 28 (Salata's reply brief).

[8] ECF # 27-1 (Commissioner's charts); ECF # 22-2 (Salata's charts).

[9] ECF # 22-1 (Salata's fact sheet).

[10] ECF # 30.

[11] ECF # 22-1 at 1.

[12] *Id*.

[13] *Id*.

[14] ECF # 13, Transcript ("Tr.") at 17.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ

made the following finding regarding Salata's residual functional capacity ("RFC"):

> Since the August 31, 2011 alleged onset date with the exception of briefer
> periods of less than 12 continuous months, the claimant has retained the
> residual functional capacity to perform all basic work activities described in
> 20 CFR 404.1521 and 404.1545 subject to the following
> limitations/restrictions: he can lift and/or carry up to 10 pounds frequently and
> up to 20 pounds occasionally without any limitations with respect to handling,
> fingering or feeling provided that he does not have to reach overhead with
> either or both upper extremities more than occasionally; and he can sit with
> normal breaks for about six hours in an eight hour period; and he can stand
> and/or walk for with normal breaks for about four hours in and eight hour
> period; and he can occasionally climb stairs; and he can frequently climb
> ramps; and he can frequently balance and kneel; and he can occasionally stoop,
> crouch, and crawl. However, the claimant has not been able to climb ladders,
> ropes, or scaffolds.  The claimant has also not been able to work in
> environments where he would of concentrated exposure to temperature
> extremes and/or humidity and/or other respiratory irritants. The claimant has
> also been able to understand, remember, and carry out tasks associated with
> unskilled work, or work that is further defined as having specific vocational
> profiles of 1 and 2, or work that us further defined as work that can be learned
> within 30 days or after a short demonstration. The claimant has also been able
> to maintain his attention, pace himself and persists at tasks associated with
> unskilled work provided that the tasks are routine, and provided that the work
> is not subject to strict production quotas, and provided that interactions he
> would have with co-workers, supervisors and/or members of the public would
> be limited to speaking, signaling, taking instructions and/or carrying out
> instructions. [15]

Given that residual functional capacity, the ALJ found Salata incapable of performing his

past relevant work as production machine operator, stock handler, and truck driver.[16]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ

Based on an answer to a hypothetical question posed to the vocational expert at the

---

[15] *Id.* at 24-25.

[16] *Id*. at 29.

hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Salata could perform.[17] The ALJ, therefore, found Salata not under a disability.[18]

## B.    Issues on judicial review

Salata asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Salata presents the following issues for judicial review:

- Whether the ALJ erred in failing to provide good reasons for the weight she gave to treating podiatrist Dolce where she expressly stated Dr. Dolce was not an acceptable medical source and her decision is devoid of analysis under Social Security's own rules and regulations.[19]

- Whether the ALJ erred in failing to provide good reasons for the weight she gave to treating physician Kaple where she ignored a significant aspect of his opinion concerning Mr. Salata's inability to lift any amount frequently and her analysis of the evidence fails to consider the record as a whole.[20]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be remanded for further administrative proceedings.

---

[17] *Id*. at 31.

[18] *Id*. at 33.

[19] ECF # 22 at 1.

[20] *Id*.

# Analysis

**A.      Standards of review**

*1.      Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's

findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential

standard.

## 2.    *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to

give more weight to opinions of treating sources than to those of non-treating sources under

appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since
> these sources are likely to be the medical professionals most able to provide
> a detailed, longitudinal picture of your medical impairment(s) and may bring
> a unique perspective to the medical evidence that cannot be obtained from
> objective medical findings alone or from reports of individual examinations,
> such as consultative examinations or brief hospitalizations.[24]

If such opinions are "well-supported by medically acceptable clinical and laboratory

diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case

record," then they must receive "controlling" weight.[25]

---

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[24] 20 C.F.R. § 404.1527(d)(2).

[25] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[26] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[27]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[28] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[29] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[30] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[31]

In *Wilson v. Commissioner of Social Security*,[32] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[26] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[27] *Id.*

[28] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[29] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[30] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[31] *Id.* at 535.

[32] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[33] The court noted that the regulation expressly

contains a "good reasons" requirement.[34] The court stated that to meet this obligation to give

good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[35]

The court went on to hold that the failure to articulate good reasons for discounting

the treating source's opinion is not harmless error.[36] It drew a distinction between a

regulation that bestows procedural benefits upon a party and one promulgated for the orderly

transaction of the agency's business.[37] The former confers a substantial, procedural right on

the party invoking it that cannot be set aside for harmless error.[38] It concluded that the

requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[33] *Id.* at 544.

[34] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[35] *Id.* at 546.

[36] *Id.*

[37] *Id.*

[38] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[39]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[40] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[41] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[42] *Blakley v. Commissioner of Social Security*,[43] and *Hensley v. Astrue*.[44]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[45] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[46] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's

---

[39] *Id.*

[40] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[41] *Id.* at 375-76.

[42] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[43] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[44] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[45] *Gayheart*, 710 F.3d at 376.

[46] *Id.*

opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[47] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[48]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[49] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[50] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[51] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[52] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[53]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

---

[47] *Id.*

[48] *Rogers*, 486 F.3d at 242.

[49] *Gayheart*, 710 F.3d at 376.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[54]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[55] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[56] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[57] or that objective medical evidence does not support that opinion.[58]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[54] *Id.*

[55] *Rogers*, 486 F.3d 234 at 242.

[56] *Blakley*, 581 F.3d at 406-07.

[57] *Hensley*, 573 F.3d at 266-67.

[58] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[59] The Commissioner's *post hoc* arguments on judicial review are immaterial.[60]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[61]

- the rejection or discounting of the weight of a treating source without assigning weight,[62]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[63]

---

[59] *Blakley*, 581 F.3d at 407.

[60] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[61] *Blakley*, 581 F.3d at 407-08.

[62] *Id.* at 408.

[63] *Id.*

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[64]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefore,[65] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[66]

The Sixth Circuit in *Blakley*[67] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[68] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[69]

In *Cole v. Astrue*,[70] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[64] *Id.* at 409.

[65] *Hensley*, 573 F.3d at 266-67.

[66] *Friend*, 375 F. App'x at 551-52.

[67] *Blakley*, 581 F.3d 399.

[68] *Id.* at 409-10.

[69] *Id.* at 410.

[70] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[71]

**B.      Application of standards**

This matter essentially involves the treatment of two medical opinions by the ALJ. In the case of Dr. Marc Dolce, D.P.M., Salata maintains that the ALJ erred from the beginning in her analysis of this opinion by incorrectly deeming Dr. Dolce an unacceptable treating source.[72]   As to the opinion of Dr. Scott Kaple, D.O., the claimant's treating physician from 2010 to 2012,[73] Salata asserts that the ALJ erred by not specifically addressing Dr. Kaple's opinion as to the amount of weight Salata could lift frequently.[74]

*1.      Dr. Dolce*

As noted, Salata initially maintains that the ALJ's analysis of Dr. Dolce's opinion was defective from the outset when she incorrectly stated that Dr. Dolce - a podiatrist - was not an acceptable medical source.[75]   The Commissioner concedes the point that Dr. Dolce was improperly labeled as a non-acceptable medical source,[76] but then asserts that under

---

[71] *Id.* at 940.

[72] ECF # 22 at 7.

[73] *See, id*, attachment at 5.

[74] ECF # 22 at 11.

[75] Tr. at 29.

[76] ECF # 27, at 9 fn. 2.

*Gayheart*, and under the harmless error exceptions in the regulations, there was no harm in not including a specific recognition of Dr. Dolce as a treating source, with an accompanying discussion as to whether, as such, Dr. Dolce's opinion was entitled to controlling weight, because the ALJ then proceeded to the next *Gayhear*t step of determining the weight to be given to that opinion and stating reasons for the weight so assigned.[77]

This "harmless error" argument by the Commissioner focuses on whether an ALJ "has met the goal of § 1527(d)(2) - the provision of the procedural safeguard of reasons - even though [the Commissioner] has not complied with the terms of the regulation."[78] As such, the key factor in this regard is that the ALJ has provided good reasons - ascertainable to the claimant and the reviewing court - for assigning less than controlling weight to a treating source opinion.

As an initial inquiry, Salata questions whether it is truly a *de minimus* violation of *Gayheart* for the ALJ to fail to identify Dr. Dolce as a treating source.[79] Essentially, he contends that this failure eliminated an entire step of the required analysis - *i.e*., the determination of whether the opinion deserves controlling weight - and so the matter must be remanded on this basis alone.[80]

---

[77] *Id*. at 7.

[78] *Wilson*, 378 F.3d at 547 (quoting regulation).

[79] ECF # 28 at 3.

[80] *Id*.

In that regard, the more precise formulation of this objection is that Dr. Dolce is mis-identified as a non-acceptable source, since the ALJ does refer to him as "not an acceptable *treating* source."[81]  I have found only scant authority on the precise consequences of mis-identifying an acceptable medical source as unacceptable - and neither party has cited me to any.

In the 2014 case of *Walker v. Colvin*[82] the district court in the Western District of Virginia addressed the same issue of whether an ALJ's error in mis-identifying an acceptable medical source opinion as coming from an unacceptable treating source constituted harmless error, or whether it *per se* required reversal and remand.  The court there determined that it was harmless error to mistakenly label the acceptable source as unacceptable because in the end the ALJ explained and supported the ultimate weight assigned by citing substantial evidence for that result.[83] As such, the *Walker* analysis is fully consistent with the Commissioner's understanding of the harmless error rubric as applied to the facts of this case, and absent any contrary authority on point, is persuasive.

That said, the Commissioner's argument is that notwithstanding the mis-identification of Dr. Dolce as an unacceptable treating source, the ALJ's decision nevertheless "supplied several sound reasons for why Dr. Dolce's opinion was entitled to little weight ...."[84] As

---

[81] Tr. at 29 (emphasis added).

[82] *Walker v. Colvin*, No. 7:12 CV850, 2014 WL 131059 (W.D. Va. Jan. 14, 2014).

[83] *Id*. at * * 8-9.

[84] ECF # 27 at 9.

related by the ALJ, Dr. Dolce's opinion stated that Salata needed to keep his left leg elevated.[85]  The ALJ then discredited this opinion on the grounds that it was offered before the surgery that ultimately "ameliorated" the symptoms, and because this "statement regarding the need for elevation is not supported by the longitudinal record, is not consistent with the above-mentioned State agency physicians who reviewed the record, or with the opinions of the above-mentioned treating physician dated November 1, 2013 [Dr. Kaple] that are found [in the exhibits]."[86]

The ALJ's citation to the opinion of Dr. Kaple - given six months after the surgery - provides evidence of where another treating source opinion was inconsistent with the view that elevation of the leg was required after surgery.[87]  Moreover, and of equal importance, the ALJ noted that the opinion of a state agency reviewer, issued three months prior to the final surgery,[88] was also inconsistent with a requirement for left leg elevation.[89]

In this regard, the ALJ also gave lesser weight to the state agency reviewers who examined the record in 2012, or more than a year before the final surgery in 2013, and who

---

[85] Tr. at 29.

[86] Id. (citing record).

[87] Tr. at 29 (citing tr. at 1198 - 2003)(claimant could sit, stand, walk for three hours at a time; no indication of a need to elevate leg).

[88] See, tr. at 1086-1093 (dated 3/12/2013).

[89] Id. at 29.

-17-

found Salata was capable of standing/walking for six out of eight hours.[90]  That said, while these earlier opinions received lesser weight than opinions from the post-operative period, they were, in this area of standing and walking, consistent with the later post-operative opinion of Dr. Kaple, and were noted as such by the ALJ.[91]

Thus, to the extent that Salata seems to argue that there is a lack of evidentiary support for a finding of disability for the period between the onset date of 2011 and any post-surgery "improvement" in 2013,[92] the state agency opinions from June 2012 and November 2012 - cited by the ALJ in her opinion - provide substantial evidence for the opposite conclusion that no disability existed during this period.

Finally, as the Commissioner notes, the ALJ earlier in the opinion reviewed the record since the onset date in 2011 and identified numerous pre-2013 clinical findings that Salata had normal strength and sensation in his upper and lower extremities, as well as a normal gait.[93]  Moreover, the ALJ also directly observed that there has not been any continuous period since August 31, 2011 where Salata needed to use any assisting device such as a cane, crutch ir brace for ambulation, or to assist in the handling of objects.[94]

---

[90] *Id*. at 28 (citing tr. at 154, 170).

[91] *Id*.

[92] ECF # 22 at 9.

[93] *Tr*. at 26-27 (citing record).

[94] *Id*.  Salata has referenced other records from this period that show decreased range of motion and antalgic gait. ECF # 22 at 12 (citing record).

-18-

Thus, as detailed above, the ALJ has stated sufficiently good reasons for assigning little weight to the opinion of Dr. Dolce, and by doing so has excused as harmless any error in otherwise conforming to the *Gayheart* analysis. [95]

## 2.    *Dr. Kaple*

Salata here contends that because Dr. Kaple, in filing out the check-box form, did not opine on the subject of what weight Salata could lift frequently, confining his opinion to what weight Salata could never lift and what weight he could occasionally lift,[96] the ALJ erred by "not noticing" this part of Dr. Kaple's opinion, by never mentioning his name, by not assigning a weight to the whole of this opinion, and by appearing to accept some of this opinion while rejecting other parts - all without a statement of reasons.[97]

It is apparent in the discussion of the preceding issue, that the ALJ opinion here is not the textbook model for clarity or precision.  But, that said, Salata can also seem overly eager to ascribe fault to matters of style, not substance.  For example, while it is true that Dr. Kaple is not referred to by name, the ALJ very specifically identifies him on multiple occasions as the "treating physician" or "above-mentioned treating physician" who gave a functional opinion on November 1, 2013, with on the record citations to the particular exhibit at issue.[98]

---

[95] *See, Hall v. Comm'r of Soc. Sec.*, 148 Fed. Appx. 456, 464 (6th Cir. 2005).

[96] Tr. at 1098.

[97] ECF # 22 at 11.

[98] Tr. at 22, 27, 28.

Surely there is no doubt who is meant by these very specific references.  In matters of writing style, the rule has long been understood as being "*de gustibas non disputandum est.*"

Next, Salata contends that the ALJ ignored or rejected a functional restriction by Dr. Kaple purportedly to the effect that there was no amount of weight that Salata could lift frequently, basing this argument on the fact that Dr. Kaple did not fill in any weight amount in the boxes for frequent lifting.[99]  To that point, the Commissioner maintains either that it would have been "internally inconsistent" to understand Dr. Kaple as believing that Salata could occasionally lift 20 pounds but frequently lift nothing, or - if that is truly what his opinion must be understood as saying - it was harmless error to disregard it, because if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, then any failure to observe the articulation and weight giving requirements is harmless.[100]

While the Commissioner advances numerous reasons in the record as to why Dr. Kaple's opinion should not be understood as stating the view that Salata can frequently carry nothing of any weight, this is all impermissible *post-hoc* rationalization.  The fact is that the form completed by Dr. Kaple - an acknowledged treating source - shows no signs that Dr. Kaple forgot to include a view of frequently lifted weight. Rather, in the area for weight to be lifted or carried shows that in each separate category - lifting and carrying - Dr. Kaple

---

[99] ECF # 22 at 11.

[100] ECF # 27 at 12-13.

filled out the entire section for both categories and did so by restricting his answers to amounts that could be either never done, or only be done occasionally.[101]

Further, as Salata points out, this is not a patent or obvious error given his medical history of pain and frequent surgery.[102]  The Commissioner's citation to the claimant's own testimony that he could lift a gallon of milk as proof of the "patent deficiency" of any opinion that he could not frequently lift any weight,[103] fares no better as a reason for ignoring Dr. Kaple's opinion in this regard. Plainly, a task - lifting a gallon milk jug - is something performed only infrequently outside of the context of working at a commercial dairy or busy grocery store.  As such, it cannot be considered proof that there is no valid reason for Salata's treating physician believing that Salata lacks the ability to regularly lift or carry weight of any consequence.

In addition, the ALJ was, at best, imprecise when she stated that the lifting and carrying restrictions contained in the RFC "are supported by all the medical sources who have offered an opinion in this matter on this issue."[104]  For the reasons stated, that is clearly not the case. And because Dr. Kaple's opinion is that of an acceptable treating source, any deviation from that opinion in such a significant degree must be explained, but was not.  For

---

[101] Tr. at 1098.

[102] ECF # 22 at 11-12.

[103] ECF # 27 at 13.

[104] Tr. at 28.

this reason, and because, as noted, Dr. Kaple's opinion in full was never given any weight,[105] the matter must be remanded.

## Conclusion

For the reasons stated, I find that the decision of the Commissioner denying Scott A. Salata's application for benefits is not supported by substantial evidence, and so is hereby reversed, with the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: February 7, 2017                    s/ William H. Baughman, Jr.
                                           United States Magistrate Judge

---

[105] This is true as to the opinion as a whole, although it may be credibly stated that some portions of it were given weight in the ALJ's discussions. *See*, tr. at 28-29 detailing reasons for "lesser weight" given to Dr. Kaple's opinion, together with the opinions of state agency reviewers, on the subject of standing and/or walking, and finding Salata's actual "manipulative, postural and environmental" limitations "not as great" as those opined by Dr. Kaple. These references though should not be understood as fully explaining good reasons for lesser weight given in these regards.